**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **TOMAS RUIZ and ROJELIO MARTINEZ** | § | |
| **on behalf of themselves and on behalf of all** | § | |
| **others similarly situated,** | § | |
| | § | |
| **Plaintiffs,** | § | **CIVIL ACTION NO. 4:08-cv-1692** |
| | § | |
| **v.** | § | |
| | § | |
| **GVMS, INC., GVHC, INC.** | § | |
| **GV MARINE SERVICES and** | § | |
| **GEORGE SACARIAS VASQUEZ,** | § | |
| **Individually,** | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AS TO EMPLOYEE STATUS

NOW COME Plaintiffs Arturo Pena and Rojelio Martinez, individually and on behalf of all others similarly situated, (hereinafter "Plaintiffs") and file this Motion for Summary Judgment as to Employee Status against Defendants GVMS, INC., GVHC, INC., GV Marine Services and George Sacarias Vasquez (collectively "GVMS" or "Defendants") and respectfully state as follows:

# TABLE OF CONTENTS

PAGE

Table of Contents .................................................................................................ii

Table of Authorities .............................................................................................iv

Introduction and Summary of the Argument ........................................................1

Issue to be Decided ..............................................................................................2

Summary Judgment Evidence ..............................................................................2

Background ...........................................................................................................3

    A.  Parties...........................................................................................................3

    B.  Defendants' payroll practice in labeling employees as independent contractors violates the FLSA ............................................................................................4

Argument and Authorities ....................................................................................6

    A.  The issue of whether a worker is an employee or an independent contractor is a mixed question of law and fact.  Where there are no factual disputes, the case is appropriate for summary judgment...............................................................6

    B.  The FLSA's definition of employee is one of the broadest found in all contexts of the law. ......................................................................................................7

    C.  The ultimate issue under the "economic reality" test is whether the worker is in business for himself or is dependent upon the business of the purported employer.  Plaintiffs are entitled to Summary Judgment because Plaintiffs were dependant upon the business of Defendants and were not in business for themselves .....................8

        i.  Defendants exercised direct control over the work of the Plaintiffs, including when, where, and how their work was to be performed ........................9

            a.  Defendants secured the contracts for the joiner projects, controlled the joiner projects, and set the time period for when the Plaintiffs were required to complete their joiner work ...............13

            b.  Defendants controlled every detail of the Plaintiffs' joiner and janitor work ........................................................................................14

c.  Defendants controlled every aspect of hiring, promotion, demotion, and rates of pay of the Plaintiffs ....................................... 15

d.  Defendants' control over the worksite, control over the work that the Plaintiffs performed, and control over all personnel decisions supports a finding that the Plaintiffs were employees ......... 15

ii.  Plaintiffs invested little to no money to perform their work when compared to the large investment made by Defendants into operating their joiner business ........................................................................................ 17

iii.  Plaintiffs' opportunity for profit and loss was determined exclusively by Defendants. ............................................................................................ 19

iv.  Plaintiffs performed work which involved very little skill and initiative and which was primarily manual labor .............................................. 21

v.  Plaintiffs had a lengthy work relationship with Defendants such that the "permanency of the relationship" factor supports employment status ................ 23

vi.  An additional consideration that also points in favor of finding an employment relationship between Plaintiffs and Defendants is the fact that Defendants provided Plaintiffs with fringe benefits such as loans, shirts, and payments for food ................................................................................ 24

vii.  Defendants' actions in deducting workers' compensation premiums is persuasive evidence that Defendants viewed the Plaintiffs as their employees ...................................................................................................... 25

D.  The economic reality of the relationship between Plaintiffs and Defendants was of an employee/employer relationship.  The Plaintiffs were dependant upon and relied upon the business of Defendants for their continued employment.  Accordingly, Summary Judgment should be granted in favor of Plaintiffs and Plaintiffs are entitled to their overtime pay ......................... 25

Conclusion ................................................................................................................................. 26

Prayer for Relief ........................................................................................................................ 26

Certificate of Service ................................................................................................................. 27

## <u>TABLE OF AUTHORITES</u>

PAGE

# CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)........................................................2

*Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728 (1981)...........................3

*Brock v. Mr. W Fireworks*, 814 F.2d 1042 (5th Cir. 1987)...............................passim

*Cash v. Conn Appliances, Inc.*, 2 F. Supp. 2d 884 (E.D. Tex. 1997)...........................3

*Dalheim v. KDFW-TV*, 918 F.2d 1220 (5th Cir. 1990)...........................................1, 6

*De Leon-Granados v. Eller & Sons Trees, Inc.*..............................................................3

*Dial America Mktg. v. Brock*, 474 U.S. 919 (1985)......................................................7

*Dole v. Snell*, 875 F.2d 802, 811 (10th Cir. 1989)......................................................23

*Halferty v. Pulse Drug Co., Inc.*, 821 F.2d 261, 265 (5th Cir. 1987) ...............passim

*Herman v. Express Sixty-Minutes Delivery Services, Inc.*, 161 F.3d 299 (5th Cir. 1998)...............8

*Hopkins* v. Cornerstone America, 545 F.3d 338 (5th Cir. 2008)........................passim

*McLaughlin v. Seafood, Inc.*, 867 F.2d 875 (5th Cir. 1989)......................................21

*Mednick v. Albert Enterprises, Inc.*, 508 F.2d 297 (5th Cir. 1975)............................8

*Nationwide Mutual Ins. v. Darden*, 503 U.S. 318 (1992) ............................................7

*Powell v. Collier Constr.*, 2005 WL 2429245 at *4-*5 (W.D. La. 2005)..............passim

*Reich v. Priba Corp.*, 890 F. Supp. 586, 592 (N.D. Tex. 1995).....................................8

*Robicheaux v. Radcliff Material, Inc.*, 697 F.2d 662 (5th Cir. 1983)..................passim

*United States v. Rosenwasser*, 323 U.S. 360 (1945)......................................................7

**<u>TABLE OF AUTHORITIES CONT'D</u>.**                    PAGE

## STATUTES

Fed. R. Civ. P. 56(c)..........................................................................................2

29 U.S.C. § 202(a) ..........................................................................................3

29 U.S.C. § 203(d) ..........................................................................................7

29 U.S.C. § 203(e)(1)..........................................................................................7

29 U.S.C. § 203(g) ..........................................................................................7

29 U.S.C. § 207(a)(1)..........................................................................................3

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

This lawsuit arises under the Fair Labor Standards Act (hereinafter "FLSA") and concerns a company's practice of misclassifying its employees as independent contractors to avoid paying overtime.  Plaintiffs have brought this lawsuit seeking to recover their overtime wages that were wrongfully withheld.

The issue before the Court is whether Plaintiffs were the employees of Defendants under the standards of the FLSA.  The question of whether an individual is an employee or an independent contractor under the FLSA is a mixed question of fact and law for this Court to resolve. *See, e.g., Dalheim v. KDFW-TV*, 918 F.2d 1220, 1225-26 (5th Cir. 1990).   Defendants do not dispute that Plaintiffs were not paid overtime. (*See* Exhibit "A," Defendant GVMS, Inc.'s Responses to Plaintiff Tomas Ruiz's Request for Admissions at 3.) They simply assert that as a matter of law, Plaintiffs were not entitled to overtime because they were independent contractors. (*See id.* at 3.) Plaintiffs now move for Summary Judgment seeking a judicial determination that, as a matter of law, that the Plaintiffs were employees of Defendants as defined by the standards of the FLSA.

This Motion for Summary Judgment should be granted for the following reasons:

(1) The "economic realities" test under the FLSA is extremely broad.  Employment relationships exist under the FLSA in situations where traditional common law standards would not find employment relationships.

(2) Defendants exercised complete control over the Plaintiffs.  Defendants directed when, where, and how the Plaintiffs' work were to be performed.

(3) Plaintiffs invested no money to perform their work for Defendants.  To the contrary, Defendants made huge investments when starting and operating their "joiner" business.

(4) The Plaintiffs' opportunity for profit and loss was determined exclusively by

Defendants.   In particular, Plaintiffs were paid by the hour and it was up to Defendants as to how many hours the Plaintiffs worked.

(5) Plaintiffs are unskilled workers; many with less than high school educations. The work they performed was primarily manual labor which did not in any way involve the skill and initiative of an independent entrepreneur.

(6) Plaintiffs worked for Defendants for a lengthy period of time.  Plaintiffs did not work for any other employer during the time they worked for Defendants and their sole means of income was their wages from Defendants.

## II.    ISSUE TO BE DECIDED

The issue to be decided is, whether the Plaintiffs were "independent contractors" or "employees" under the FLSA. Summary Judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251 (1986).

## III.    SUMMARY JUDGMENT EVIDENCE

Plaintiffs incorporate by reference the following summary judgment evidence to which each letter refers to an attached exhibit.

A.    Defendant GVMS, Inc.'s Responses to Plaintiff Tomas Ruiz's Request for Admissions

B.    Deposition of George Vasquez

C.    Deposition of Jesse Vasquez

D.    Affidavit of Arturo Pena

E.    Affidavit of Pedro Pardo

F.    Affidavit of Ramiro Morino

G.    Deposition of Rojelio Martinez

H.    Payroll Records

2

I.    GVMS Health, Safety, and Environmental Manual

J.    Defendant's Answers to Plaintiff's First Interrogatories

## IV.    BACKGROUND

Congress enacted the FLSA "to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (quoting 29 U.S.C. § 202(a)). The United States Supreme Court has explained that "[t]he Act created minimum protection for individual workers to ensure that each employee would receive " '[a] fair day's pay for a fair day's work' and would be protected from 'the evils of "overwork" as well as "underpay."'" *Id.*, at 739. In fact, the FLSA was enacted to protect workers who lack sufficient bargaining power to secure a subsistence wage. *See De Leon-Granados v. Eller & Sons Trees, Inc.*, 2008 WL 4531813 (N.D. Ga. 2008); *see also Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739-40 (1981). As such, minimum wage and overtime requirements are the two central themes of the Act. *See Cash v. Conn Appliances, Inc.*, 2 F. Supp. 2d 884, 889 (E.D. Tex. 1997).

To that end, the FLSA provides:

> no employer shall employ any of his employees…for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

*See* 29 U.S.C. § 207(a)(1).

## A.    The Parties.

The Defendants are GVMS, INC., GVHC, INC., GV Marine Services, and George Sacarias, individually – the president of GVMS, Inc. GVMS operates a construction business

3

that specializes in "joiner" work. (*See* Exhibit "B," Deposition of George Vasquez at 44, lns. 22-25; 45, lns. 1-7; 94, lns. 23-24; 99, lns. 7-22.)   A "joiner" is a laborer that provides remodeling services to living quarters in offshore oil rigs. (*See* Exhibit "B," at 45, lns. 1-7; 50, lns. 22-25; 51, lns. 1-5; Exhibit "C," Deposition of Jesse Vasquez at 58, lns. 4-13.)   A joiner's duties consist of performing various tasks of manual labor such as plumbing, flooring, and painting.  (*See* Exhibit "B," at 136, lns. 16-25; 137, lns. 1-5;  Exhibit "C," at 54, lns. 14-25; 55, lns. 1-8; 57, lns. 18-21.) The Plaintiffs are former employees of GVMS working as joiners or janitors. (*See* Exhibit "B," at 94, lns. 25; 95, lns. 1-25.) The janitors simply cleaned the work areas while the joiners performed their tasks. (*See id.* at 98, lns. 5-10.)   Janitors swept floors, mopped floors, and picked up trash.  (*See id.* at 106, lns. 3-19.)

The Plaintiffs are Arturo Pena and Rojelio Martinez, individually and on behalf of all others similarly situated. Currently, six other former employees of Defendants have opted into this collective action for a class size of eight. (*See* Plaintiffs' First Amended Original Complaint.)  The Plaintiffs are unskilled manual laborers with very little education. (*See* Exhibit "D," Affidavit of Arturo Pena; Exhibit "E," Affidavit of Pedro Pardo; Exhibit "F," Affidavit of Ramiro Morino.)  In fact, many of the Plaintiffs do not even have a high school education. (*See id.*) The Plaintiffs typically worked over forty hours per week for Defendants. (*See* Exhibit "A," at 3.)  However, the Plaintiffs were not paid overtime at all.  All hours worked over forty were compensated at the Plaintiffs' regular rate of pay.  (*See* Exhibit "H," Payroll Records.)

**B.    Defendants' payroll practice in labeling employees as independent contractors violates the FLSA.**

Defendants violate the FLSA by misclassifying its employees as independent contractors. Frequently employers attempt to avoid the burdens of paying overtime to their employees by

misclassifying their employees as independent contractors.  However, Defendants' actions in this case are black and white violations of the FLSA.

A normal day for the Plaintiffs began with the Plaintiffs approaching a security desk at a dock where an oil rig was stationed.  (*See* Exhibit "C," at 96, lns. 21-25; 97, lns. 1-9; 101, lns. 22-25.)  At the security desk, the Plaintiffs would present a badge which identified that they worked for GVMS.  (*See id.* at 96, lns. 21-25; 97, lns. 1-9.)  The badge had a picture of each Plaintiff, identified his position with GVMS, and stated "GVMS" underneath the Plaintiff's name.  (*See* Exhibits "C," at 100, lns. 6-11; Exhibit "D"; and Exhibit "E.")  At times, the Plaintiffs also wore shirts that indicated that they worked for GVMS.  (*See* Exhibits "B," at 181, lns. 19-24; Exhibit "C," at 100, lns. 16-25; 101, lns. 1-3.)  After the Plaintiffs passed the security desk, they went to the "muster" station.  (*See* Exhibit "C," at 102, lns. 10-21.)  At the "muster" station, the Plaintiffs met Jesse Vasquez, George Vasquez's brother.  (See id. at 102, lns. 10-21; 103, lns. 1-14.)  Jesse Vasquez was the foreman for GVMS and the Plaintiffs' supervisor.  (*See* Exhibits "D," "E," and "F.")  Jesse Vasquez recorded the time that each Plaintiff arrived at the jobsite in a log book to track the start and stop times for each worker.  (*See* Exhibit "B," at 163, lns. 7-12; Exhibit "C," at 113, lns. 20-23.)  After all Plaintiffs arrived, Jesse Vasquez put the Plaintiffs into work crews and assigned the tasks to be performed.  (*See* Exhibit "C," at 93, lns. 14-25.)  Each of the tasks given to the Plaintiffs changed on a daily basis.  (*See* Exhibit "B," at 190, lns. 2-17; Exhibit "C," at 79, lns. 9-17.)

Throughout the typical work day, Jesse Vasquez did a "walk around."  (*See* Exhibit "C," at 64, lns. 24-25; 65, ln. 1.)  The "walk around" consisted of Jesse Vasquez monitoring the work of the Plaintiffs to "make sure everything is being done right."  (See id. at 64, lns. 24-25; 65, lns 1, 19-25; 66, lns. 5-15.)  Jesse Vasquez was responsible for ensuring that the Plaintiffs performed

5

quality work.  (*See id.* at 78, lns. 22-25; 79, lns. 1-3.)  Throughout the day, the Plaintiffs used the

tools, supplies, and equipment owned and provided by GVMS to do their work. (*See id.* at 107,

lns. 9-22; 109, lns. 2-9.)   If they needed to leave early, they would have to notify Jesse Vasquez.

(*See id.* at 135, lns. 24-25; 136, lns. 1-3.)

### III.   <u>ARGUMENTS AND AUTHORITIES</u>

**A.  The issue of whether a worker is an employee or an independent contractor is a mixed question of law and fact.  Where there are no factual disputes, the case is appropriate for summary judgment.**

The ultimate determination as to whether a worker is an employee or independent

contractor is a mixed question of fact and law for the trial court. *See, e.g., Brock v. Mr. W*

*Fireworks*, 814 F.2d 1042, 1045 (5th Cir. 1987) ("The ultimate finding as to employee status is

not simply a factual inference drawn from historical facts, but more accurately is a legal

conclusion based on factual inferences drawn from historical facts"); *Dalheim v. KDFW-TV*, 918

F.2d 1220, 1225-26 (5th Cir. 1990).  In *Robicheaux v. Radcliff Material, Inc.*, the Fifth Circuit

explained as follows:

> We review the district court's determination as being one of mixed law
> and fact. *Donovan, supra,* 686 F.2d at 270 note 4. As to the trial court's
> underlying factual findings and factual inferences deduced therefrom, we
> are bound by the clearly erroneous standard of Rule 52(a) of the Federal
> Rules of Civil Procedure. *Id.* However, as to the legal conclusion reached
> by the district court based upon this factual data, *i.e.,* here that these
> welders are employees rather than independent contractors, we may
> review this as an issue of law. *Id.*

*Robicheaux v. Radcliff Material, Inc.*, 697 F.2d 662, 666 (5th Cir. 1983).

The deposition testimony of Defendant George Vasquez and his brother, Jesse Vasquez,

render this case appropriate for summary judgment.  There are no factual disputes which would

preclude a finding of employee status.  Based upon the deposition testimony and the affidavits

submitted herein, the Court should render a ruling that as a matter of law, Plaintiffs were employees of Defendants under the FLSA.

**B.  The FLSA's definition of employee is one of the broadest found in all contexts of the law.**

The United States Supreme Court has specifically acknowledged that the FLSA's definition of employee is among the broadest of all labor statutes.  *See Dial America Mktg. v. Brock*, 474 U.S. 919 (1985).  In fact, the United States Supreme Court has recognized that the statute's definition of "employee" has "been given the broadest definition that has ever been included in any one act."  *See United States v. Rosenwasser*, 323 U.S. 360, 363 n. 3 (1945); *see also Nationwide Mutual Ins. v. Darden*, 503 U.S. 318, 326 (1992) (noting the "striking breadth" of the expansive definition of employee under the FLSA.)

Under section 203(e)(1) of the FLSA, an "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." *See* 29 U.S.C. § 203(d).  The term "employ" is defined expansively to mean "to suffer or permit to work." *Nationwide Mutual Ins. v. Darden*, 503 U.S. 318, 326 (1992) (quoting 29 U.S.C.A § 203(g)). The United States Supreme Court has acknowledged that the FLSA's expansive definition of employee "stretches the meaning of 'employee' to cover some parties who might not qualify as employees under a strict application of traditional agency principles." *See id.* at 326.

In general, the inquiry into whether an employer-employee relationship exists is not limited by contractual terminology, by labels that the employer places on the parties' relationship,  by the traditional common law agency concepts of "employee" or "independent contractor," by common law employee categories or classifications, or by the common law right

to control test. *See, e.g, Mednick v. Albert Enterprises, Inc.*, 508 F.2d 297 (5th Cir. 1975).[1] Particularly, the terms "employee" and "independent contractor" are *not* to be construed in their common law sense. *See Reich v. Priba Corp.*, 890 F. Supp. 586, 592 (N.D. Tex. 1995) (citing *Mednick v. Albert Enterprises, Inc.*, 508 F.2d 297, 299 (5th Cir. 1975).) Instead, the determination of employment status under the FLSA is guided by the economic reality of the relationship. *See Herman v. Express Sixty-Minutes Delivery Services, Inc.*, 161 F.3d 299, 303 (5th Cir. 1998). The Court's focus is whether, as a matter of economic reality, a person is economically dependant upon the employer to which he renders his services. *See id.* at 303. "In other words, [the Court's] task is to determine whether the individual is, as a matter of economic reality, in business for himself/herself." *See, e.g., id.* at 303. This test is what has been termed by the Courts as the "economic reality test." *See, e.g., id.* at 303; *Hopkins v. Cornerstone America*, 545 F.3d 338, 343 (5th Cir. 2008).

**C. The ultimate issue under the "economic reality" test is whether the worker is in business for himself or is dependent upon the business of the purported employer. Plaintiffs are entitled to Summary Judgment because Plaintiffs were dependant upon the business of Defendants and were not in business for themselves.**

The "economic reality test" looks to the following factors: (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investment of the putative employee versus the employer; (3) the degree to which the "employee's" opportunity for profit and loss is determined by the "employer;" (4) the skill and initiative required in performing the

---

[1] In general, there are three (3) tests which have been used by courts to determine whether a worker is an employee or independent contract. The first test is the traditional common law test of agency, turning on the employer's right to control. *See, e.g Mares v. Marsh*, 777 F.2d 1066 (5th Cir. 1985); *Hickey v. Arkla Industries, Inc.*, 699 F. 2d 748, 751 (5th Cir. 1983). This test was replaced in FLSA cases by the "economic realities" test under which persons are considered employees if they, "as a matter of economic reality, are dependant upon the business to which they render services." *See Mares*, 777 F.2d 1066.; *Hickey*, 699 F.2d 748; *Mednick v. Albert Enterprises, Inc.*, 508 (5th Cir. 1975). The third test is a hybrid which considers the "economic realities" of the work relationship as an important factor, but focuses more on "the extent of the employer's right to control the 'means and manner' of the worker's performance. *See Sprides v. Reinhardt*, 615 F.2d 826, 831 (D.C. Cir. 1979). This test is typically used in Title VII cases. *See id.* at 831.

job; and (5) the permanency of the relationship.[2]  *See, e.g., Halferty v. Pulse Drug Co., Inc.,* 821 F.2d 261, 265 (5th Cir. 1987); *Brock v. Mr. W Fireworks,* 814 F.2d 1042, 1043 (5th Cir. 1987). These factors should guide the trial court in determining whether the worker is "as a matter of economic reality" dependent upon the business of the employer for which he/she rendered service. *See Mr. W. Fireworks,* 814 F.2d at 1043-44.

An analysis of each of the factors under the "economic realities" test leads to one conclusion - the Plaintiffs were employees of Defendants under the FLSA.  Each of the factors will be addressed in turn.

> i.  ***Defendants exercised direct control over the work of the Plaintiffs, including when, where, and how their work was to be performed.***

Under the economic-realities approach, "[c]ontrol is only significant when it shows an individual exerts such a control over a meaningful part of the business that she stands as a separate economic entity." *Mr. W Fireworks,* 814 F.2d at 1049. "[T]he lack of supervision over minor regular tasks cannot be bootstrapped into an appearance of real independence." *Id.*  In determining the degree of control exercised by the putative employer over the worker, Courts look to factors such as whether the employer had control over the following aspects: (1) where to

---

[2] "No single factor is determinative." *See Herman v. Express Sixty-Minutes Delivery Services, Inc.,* 161 F.3d 299, 303 (5th Cir. 1998).  Further,

> [t]hese factors are not exhaustive, nor can they be applied mechanically to arrive at a final determination of employee status.  Rather, they must always be aimed at an assessment of the economic dependence of the putative employees, the touchstone for this totality of circumstances test.

*See Brock v. Mr. W Fireworks, Inc.,* 814 F.2d 1042, 1043 (5th Cir. 1987).  The dominant factor that informs the Court's decision is economic dependence.  *See id.* at 1044.

> The five tests are aids -- tools to be used to gauge the degree of dependence of alleged employees on the business with which they are connected.  It is *dependence* that indicates employee status.  Each test must be applied with that ultimate notion in mind.  More importantly, the final and determinative question must be whether the total of the testing establishes the personnel are so dependent upon the business with which they are connected that they come within the protection of the FLSA or are sufficiently independent to lie outside its ambit. (Emphasis in original.)

*See id.* at 1044.

work, (2) how long to work, (3) the number of days a project will last, (4) who secured the contracts for work, (5) the work assignments performed, and (6) the hiring and promotion of the workers. *See, e.g, Hopkins v. Cornerstone America*, 545 F.3d 338, 343-44 (5th Cir. 2008); *Powell v. Collier Constr.*, 2005 WL 2429245 at *4-*5 (W.D. La. 2005); *Robicheaux v. Radcliff Material, Inc.*, 697 F.2d 662, 665-66 (5th Cir. 1983). Flexibility in the hours of work, the days in which to work, and the place of work, alone will not make an individual an independent contractor rather than an employee. *See Halferty v. Pulse Drug Co., Inc.*, 821 F.2d 261, 265-66 (5th Cir. 1987).

In *Hopkins v. Cornerstone America*, 545 F.3d 338 (5th Cir. 2008), the Fifth Circuit held that several former sales leaders of a sales and marketing division of an insurance company did not exercise any meaningful control over their insurance business and were employees under the FLSA. In *Hopkins*, Cornerstone America (hereinafter "Cornerstone") was the marketing and sales subsidiary of Mid-West Life Insurance Company of Tennessee. *See id.* at 342. Cornerstone uses a pyramid system of sales agents who agree to work as independent contractors on a commission basis. *See id.* at 342. Some of the sales agents are promoted to the position of "sales leader." *See id.* at 342. The sales leaders become responsible for recruiting, training, and managing a team of subordinate sales agents. *See id.* at 342. The primary income for the sales leaders is derived from commissions on their subordinates' sales. *See id.* at 342. However, Cornerstone controls the hiring, firing, and assignment of the sales agents. *See id.* at 342. Cornerstone also unilaterally controls the sales leader's territories and prevents them from selling other insurance products. *See id.* at 342.

Cornerstone argued that the control factor weighed in favor of independent contractor status because the sales leaders exercised independence in their day to day affairs. *See id.* at 343.

10

Also, Cornerstone argued that it exerts little control beyond what the insurance industry regulations required. *See id*. at 343.

The Fifth Circuit rejected each of these arguments and held that Cornerstone exercised control over meaningful economic aspects of the business such that this factor supported employee status. *See id*. at 343-44. In reaching this conclusion, the Court found persuasive the facts that Cornerstone controlled the hiring, firing, assignment, rates of pay, and promotion of the subordinate sales agents. *See id*. at 343-44. Further, the Court found persuasive the facts that Cornerstone determined the geographic territories where the sales leaders could operate and determined the price and type of insurance products that the sales leaders could sell. *See id*. at 344. The Fifth Circuit concluded by stating the following:

> Because Cornerstone controlled the meaningful aspects of the business model such that the Sales Leaders could not plausibly be considered "separate economic entit[ies]," *see Mr. W Fireworks*, 814 F.2d at 1049, we conclude that the control factor weighs in favor of the Sales Leaders' employee status.

*Id*. at 344.

The control factor was also clarified in *Powell v. Collier Construction, L.L.C. See* 2005 WL 2429245 (W.D. La. 2005), wherein the Western District of Louisiana held that manual laborers performing mold removal work were employees and not independent contractors. In *Powell*, Collier Construction engaged in mold remediation projects in Beaumont, Texas. *Id*. at *1. Collier Construction secured contracts with insurance companies for such work. *Id*. at *1. To perform the actual labor, Collier Construction "sub-contracted" with a gentleman named Barbo who lead a group of employees that performed the mold removal work. *Id*. at *1.

The mold remediation work primarily consisted of a "tear out phase." *Id*. at *1. During this phase, the laborers tore sheetrock, flooring, and wood that were suspected of harboring

11

mold. *Id.* at *1. The laborers would then scrub away the mold. *Id.* at *1. Collier Construction set the number of days Barbo and his crew could work on a particular job and the laborers were paid by the job for this work. *Id.* at *2. Additionally, all major equipment, materials, and protective clothing was provided by Collier Construction. *Id.* at *2.

> The court noted that the critical inquiry is the economic reality of the laborer's position.

>> [I]n order to determine the employment status of Powell and Plumlee, the Court must examine whether Barbo, Powell, and Plumlee, as a matter of economic reality, were in business for themselves or for Collier Construction. *Id.,* citing *Donovan,* 642 F.2d at 143.

*Id.* at *3.

In reaching the conclusion that Collier Construction exercised control over the laborers, the court found determinative the facts that Collier Construction secured the contracts for the mold remediation projects, instructed the "crews" regarding where to work, and set the number of days that Barbo could spend on any particular project. *See id.* at *4. The court also found persuasive the facts that Collier Construction's owner, Ted Collier, would, at times, supervise Barbo and inspect the job sites. *See id.* at *4.

Moreover, considerations regarding control were addressed in *Robicheaux v. Radcliff Material,* Inc., wherein the Fifth Circuit held that a group of welders were employees under the FLSA. *See* 697 F.2d 662, 666 (5th Cir. 1983). In *Robicheaux,* the plaintiffs worked for Radcliff Material as welders. *Id.* at 665. They each signed a contract with the company stating that they were independent contractors. *Id.* at 665. They furnished their own welding equipment, which cost between five to seven thousand dollars. *Id.* at 665. The welders provided their own insurance. *Id.* at 665. The welders also invoiced Radcliff Material on their own business letterheads and filed federal income tax returns as self employed individuals. *Id.* at 665. Additionally, some welders had their own business cards, advertising, company names, and

12

letterheads. *Id.* at 665.  Radcliff Material expected the welders to arrive each morning at 7:00 am and to work to at least 5:00 pm.  *Id.* at 665.  The welders were given daily work assignments from Radcliff personnel and were told what to work on, where, and how long an assignment should last. *Id.* at 665. They were also periodically inspected by Radcliff Material personnel.  *Id.* at 665.

The Fifth Circuit noted that employee status was correctly determined by the trial court because Radcliff Material exercised substantial if not complete control over the hours worked and the jobs performed by the welders.  *See id.* at 666.  The Fifth Circuit found persuasive the facts that Radcliffe gave daily work assignments to the welders, and directed the welders regarding what to work on, where, and how long each assignment should take. *See id.* at 665-66. The Court also found important in reaching the conclusion that the welders were employees, the fact that Radcliff Material personnel also periodically supervised the welders during the day. *Id.* at 665.

As the following will demonstrate, the facts of *Hopkins*, *Powell*, and *Robicheaux* are markedly similar to those in the present case.

        **a.**    **Defendants secured the contracts for the joiner projects, controlled the joiner projects, and set the time period for when the Plaintiffs were required to complete their joiner work.**

As noted above, GVMS is a joiner company. (*See* Exhibit "B," Deposition of George Vasquez at 44, lns. 22-25; 45, lns. 1-7; 94, lns. 23-24; 99, lns. 7-22.) It provides remodeling services for housing units in offshore oil rigs. (*See* Exhibit "B," at 45, lns. 1-7; 50, lns. 22-25; 51, lns. 1-5; Exhibit "C," Deposition of Jesse Vasquez at 58, lns. 4-13.)  To earn a profit, GVMS contacts potential clients and secures contracts with oil rigs for remodeling projects. (*See* Exhibit "B," at 81, lns. 18-23.)  The Plaintiffs were the manual laborers that performed the physical labor

that this remodeling work entailed. (*See* Exhibits "D," "E," "F," and "G.") The time period for when the Plaintiffs were to complete their work was set and controlled by GVMS. (*See* Exhibit "C," at 134, lns. 18-23.) The Plaintiffs were required to complete their work within this time period and had no control over it. (*See id.* at 134, lns. 18-25; 135, lns. 1-2.) GVMS also monitored the start and stop times on a daily basis of each joiner and janitor. (*See id.* at 133, lns. 20-23; *see also* Exhibit "B," at 163, lns. 4-12.) If a Plaintiff needed to leave work early, he would have to inform GVMS. (*See* Exhibit "C," at 135, lns. 24-25; 136, lns. 1-3.)

**b. Defendants controlled every detail of the Plaintiffs' joiner and janitor work.**

Jesse Vasquez was the Plaintiffs' supervisor. (*See* Exhibits "D," "E," and "F.") He supervised every detail of the Plaintiffs' work. First, he would group the Plaintiffs into work crews and assign the tasks to each Plaintiff. (*See* Exhibit "C," at 93, lns. 2-17; 23-25.) Further, Jesse Vasquez told the Plaintiffs where to work and the scope of their work. (*See id.* at 66, lns. 13-25; 67, lns. 1-2; 70, lns. 7-25; 71, lns. 1-14; 79, lns. 9-22.) Throughout the day, Jesse Vasquez inspected the work of the Plaintiffs to ensure that they were doing as they were told. (*See id.* at 65, lns. 19-25.) Jesse Vasquez also inspected the work of each Plaintiff to ensure that the Plaintiffs were doing quality work and that each task was done right. (*See id.* at 66, lns. 5-12.) If a joiner was doing something incorrectly, it was Jesse Vasquez's duty to correct him. (*See id.* at 81, lns. 1-5.) Jesse Vasquez also was charged with the task of making sure that the joiners wore personal protective equipment, (*see id.* at 79, lns. 23-25; 80, lns. 2-23), and that the Plaintiffs followed the GVMS safety manual. (*See id.* at 131, lns. 12-19.)

14

### c. **Defendants controlled every aspect of hiring, promotion, demotion, and rates of pay of the Plaintiffs.**

George Vasquez exercised absolute control over hiring, promotion, demotion, and rates of pay. George Vasquez hired all of the Plaintiffs, (*see* Exhibit "B," at 152, lsn. 2-3; 6-9), and set the rates of pay of the Plaintiffs. (*See id.* at 165, lns. 11-18; 168, lns. 10-25; 169, lns. 1-17.) It was up to the pure discretion of George Vasquez as to whether any Plaintiff would receive an increase or decrease in their rate of pay. (*See, e.g., id.* at 168, lns. 10-25; 169, lns. 1-17.) For example of George Vasquez decreased Ramiro Morino's (an opt-in Plaintiff) pay after Mr. Morino failed a urinalysis exam. (*See* Exhibit "F." Moreover, George Vasquez controlled promotions at GVMS. For instance, if a janitor sought to receive a promotion to the joiner position, the janitor would need George Vasquez's permission. (*See* Exhibit "B," at 171, lns. 6-15.)

### d. **Defendants' control over the worksite, control over the work that the Plaintiffs performed, and control over all personnel decisions supports a finding that the Plaintiffs were employees.**

Like the facts in *Powell*, GVMS secured all of the contracts for work (*see id.* at 81, lns. 18-23; 178, lns. 19-25.), instructed the joiners and janitors on where to work (*see* Exhibit "C," at 66, lns. 16-25; 67, lns. 1-2), and set the number of days allocated to each project (*see id.* at 134, lns. 18-23). Additionally, like in *Robicheaux*, GVMS, through Jesse Vasquez, gave daily work assignments to the joiners and janitors, and directed the joiners and janitors regarding what to work on, where to work, and how to perform the tasks. Also, like Radcliff Material in *Robicheaux*, GVMS, through Jesse Vasquez, supervised the joiners and janitors throughout the work day. (*See id.* at 66, lns. 5-25; 67, lns. 1-2; 70, lns. 7-25; 71, lns. 1-14; 79, lns. 9-22.) Finally, like in *Hopkins*, George Vasquez controlled the hiring, promotion, and the rates of pay of the

15

Plaintiffs. (*See* Exhibit "B," at 152, lns. 2-3; 6-9; 165, lns. 11-18; 168, lns. 10-25; 169, lns. 1-17; 171, lns. 6-15.) Additionally, like Cornerstone, GVMS controlled the locations where the Plaintiffs were to work. (*See* Exhibit "B," at 81, lns. 18-23; 178, lns. 19-25.)

However, GVMS exercised a greater degree of control over Plaintiffs than that exercised by the employers in *Hopkins*, *Powell*, and *Robicheaux*. In the present case, GVMS controlled every aspect of how the Plaintiffs were to behave while working for Defendants. For example, Jesse Vasquez would reprimand the Plaintiffs when they behaved inappropriately. In one instance, Jesse Vasquez removed Rojelio Martinez (named class representative) from an oil rig after several safety violations. (*See* Exhibit "C," at 137, lns. 9-25; 138, lns. 1-11.) Mr. Vasquez also micro-managed the Plaintiffs' work. For instance, he would tell the Plaintiffs while they worked that they should not leave trash in the hallways or pull up carpet while they work. (*See id.* at 85, lns. 2-10.).

Additionally, the Plaintiffs were required to comply with each of the provisions of the GVMS Health, Safety, and Environmental Manual, which governed the Plaintiffs' workplace behavior. (*See* Exhibit "B," at 77, lns. 3-5; 77, lns. 19-25.) The GVMS Health, Safety, and Environmental Manual regulated the Plaintiffs' conduct on the workplace, including the Plaintiffs' hygiene, clothing, personal protective equipment, general safety practices on the worksite, and drug and alcohol usage. (*See* Exhibit "I," GVMS Health, Safety, and Environmental Manual.)

Moreover, unlike any of the employers in *Hopkins*, *Powell*, and *Robicheaux*, Defendants made admissions that the Plaintiffs were "employees." The GVMS Health and Safety Manual states as follow:

- Employees will know and abide by the company HS&E system;

16

- Each employee is responsible to know and act in accordance with the company's HS&E Management System to protect self and others, the environment and the property of the company;

- Each employee has the obligation to interrupt an operation to prevent an unsafe act or condition from causing an incident;

- Employees are encouraged to identify improvement opportunities and participate in developing implementation plans.

(*Id.* at 4.)

The reference to "employees" means the joiners and the janitors. (*See* Exhibit "B," at 124, lns. 6-25; 125, lns. 1-9.)

Finally, the Plaintiffs never signed an independent contractor agreement with Defendants, as was the case in *Robicheaux*. (*See id.* at 190, lns. 16-24.) Additionally, Plaintiffs never invoiced Defendants for the work they performed like in *Robicheaux*; instead the Plaintiffs were paid by the hour. (*See* Exhibits "D," "E," and "F.") In sum, they were simply hourly wage earners under Defendants' direct control and supervision. Under facts like these, it is clear that Plaintiffs did not have the degree of control that would render them in business for themselves.

> ii.    *Plaintiffs invested little to no money to perform their work when compared to the large investments made by Defendants in operating their joiner business.*

The investments considered in determining employment status are capital expenditures, such as risk capital, equipment, and capital investments. *See, e.g., Powell*, 2005 WL 2429245 at *5; *Reich*, 890 F. Supp. at 593. The investment of each individual worker must be compared with the investment of the purported employer to determine the degree of economic independence. *See Hopkins*, 545 F.3d at 344; *Mr. W Fireworks, Inc.*, 814 F.2d at 1052. Where an employer has provided a significant amount of risk capital and the worker has provided only a minimal

17

investment, an employer-employee relationship is more likely to be found.  *See, e.g, Hopkins,* 545 F.3d at 344; *Reich,* 890 F. Supp. at 593.

In *Hopkins,* Cornerstone invested a significant amount towards corporate offices, printing brochures, printing contracts, providing accounting services, and developing and underwriting insurance products for sale. *Hopkins,* 545 F.3d at 344. When compared to the personal investment of any one plaintiff, the Court stated that "Cornerstone's greater overall investment in the business scheme convinces us that the relative-investment factor weighs in favor of employee status." *Id.* at. 344.

Likewise in *Powell,* the Court determined that the investment factor weighed in favor of employee status. *See Powell,* 2005 WL 2429245 at *5.  In *Powell,* Collier Construction owned and provided the major machinery, such as air scrubbers and filtration systems, to do the mold remediation projects. *Id.* at. *5.   Collier Construction also provided all of the chemicals, protective clothing, air masks, and caulking needed for the work.  *Id.* at. *5.  Moreover, the Court determined that by entering into contracts for mold remediation projects, Collier Construction bore all of the risk and became the ultimate guarantor of the quality of the work performed under the contract.  *Id.* at. *5.

Again, the facts in the present case are very similar to the facts in *Hopkins* and *Powell.* Like the employees in *Hopkins* and *Powell,* the investment of the Plaintiffs when compared to the investment of Defendants is minimal, at best.   Like in *Hopkins,* Defendants invested substantial sums toward risk capital and made significant investments into the facilities and equipment for their joiner business.   In particular, Defendants paid for all operating expenses including office space, equipment, telephones, computers, office supplies, and inventory. (*See* Exhibit "B," at 179, lns. 18-25; 180, lns. 1-24; Exhibit "C," at 107, lns. 9-22; 109, lns. 2-9.)

18

Other than possibly purchasing a tool belt, Plaintiffs made no investment whatsoever.  (*See* Exhibits "D," "E," and "F.")

Like the facts in *Powell*, Defendants owned and provided nearly all of the machinery, equipment, supplies, and tools for the Plaintiffs to use. (*See* Exhibit "B," at 74, lns. 16-21; 75, lns. 9-18; 157, lns. 3-10; 160, lns. 10-15.)  Additionally, like in *Powell*, Defendants owned and provided all of the personal protective equipment used by the Plaintiffs – hard hats, safety goggles, and gloves. (*See id.* at 128, lns. 23-25; 129, lns. 16-24.) In fact, George Vasquez admitted in his deposition that Defendants spend more money towards tools, supplies, and equipment than any one Plaintiff. (*See id.* at 182, lns. 4-8). Further, like Collier Construction in Powell, GVMS secured all of the contracts and became the ultimate guarantor of the quality of the work performed under the contract. (*See id.* at 81, lns. 18-23; 178, lns. 19-25.)  Clearly, when the investment of Defendants is compared with the investment of the Plaintiffs, this factor weighs heavily in favor of employee status.

> iii.   *Plaintiffs' opportunity for profit and loss was determined exclusively by Defendants.*

Where the determinants of profit and loss are established by the putative employer, an employment relationship will likely be found.  *See, e.g., Brock v. Mr. W Fireworks*, 814 F.2d 1042, 1050-51 (5th Cir.), *cert. denied*, 484 U.S. 924 (1987).  Employment relationship will likely be found when (1) the employer controls the time for when an employee can do his work; (2) the employer controls the job location; (3) whether the worker performed work for anyone else during the time period that he performed services for the purported employer; and (4) whether the worker got paid by the hour versus by commission.  *See Powell*, 2005 WL 2429245 at *5-*6; *Robicheaux*, 697 F.2d at 666.

19

In *Powell*, the Western District of Louisiana determined that the laborers' opportunity for profit and loss supported employee status. *See Powell,* 2005 WL 2429245 at *5-*6. The Court found persuasive the facts that Collier Construction set the number of days that could be worked on a jobsite and that there was no evidence that the plaintiffs worked for any other employer during the time they worked for Collier Construction. *See id.* at *5-*6.  Likewise, in *Robicheaux,* the Fifth Circuit determined that this factor weighed in favor of employee status because any opportunity for profit was determined solely by the company's need for the welders' work, "rather than, for instance, on the initiative and planning of the individual welders." *Robicheaux,* 697 F.2d at 666-67.

The facts in the present case are nearly identical to those in *Powell* and *Robicheaux*.  In particular, (1) GVMS sought out the customers (*see* Exhibit "B," at 81, lns. 18-23); (2) GVMS entered into contracts with the prospective customers (*see id.* at 81, lns. 18-23; 178, lns. 19-25); (3) GVMS set the prices (*see id.* at 191, ln 25; 192, lns. 1-8); and (4) GVMS set the number of days at the worksites. (*See* Exhibit "C," at 134, lns. 18-23.)  The Plaintiffs were paid by the hour and it was up to GVMS as to how many hours the Plaintiffs would work. (*See* Exhibits "D," "E," "F," and "H.")  The rates of pay of the Plaintiffs were determined exclusively by George Vasquez. (*See* Exhibit "B," at 165, lns. 11-18; 168, lns. 10-25; 169, lns. 1-17.)  Moreover, the Plaintiffs did not work for any other employer during the time period that they worked for Defendants. (*See* Exhibits "D," "E," and "F.")  Given these facts, the amount that the Plaintiffs earned was exclusively decided by GVMS.

Furthermore, the facts in this case are stronger than those in *Powell* and *Robicheaux*. George Vasquez would give the Plaintiffs bonuses to reward them for working hard. (*See* Exhibit "B," at 187, lns. 3-25.)  Also, it was up to George Vasquez's discretion as to whether he would

20

increase or decrease the rates of pay of the Plaintiffs. (*See, e.g., id.* at 168, lns. 10-25; 169, lns. 1-17; *see also* Exhibit "F.") By controlling the rates of pay of the Plaintiffs, George Vasquez controlled the amounts that the Plaintiffs earned.   This factor weighs heavily in favor of employee status.

>   iv.   *Plaintiffs performed work which involved very little skill and initiative and which was primarily manual labor.*

This factor looks to the degree of skill required for the job performed by the worker. *Halferty*, 821 F.2d at 267.   Performance of work that requires little if any training may be regarded as evidence that a worker is an employee.   *See McLaughlin v. Seafood, Inc.*, 867 F.2d 875 (5th Cir. 1989). The less skill involved, the more likely an employment relationship is found. *See, e.g., Halferty*, 821 F.2d at 267. In determining whether the job required any specialized skill, courts look to whether training, certification, or testing is required. *Halferty*, 821 F.2d at 267; *Robicheaux*, 697 F.2d at 666.   Courts look to whether the individual demonstrates some unique skill set or some ability to exercise significant initiative within the business.   *See Hopkins*, 545 F.3d at 345.

In *Hopkins*, the Court found that this factor supported a finding that the sales leaders were employees. *See id.* at 345.   The Fifth Circuit noted that although the sales leaders needed skills to effectively manage their offices and teams, these were not specialized skills. *See id.* at 345. To the contrary, "they are abilities common to *all* effective managers." *Id.* at 345. The sales leaders did not exercise any unique set of skills. *Id.* at 345. They had little opportunity to exercise initiative within the business, as all major components to initiative – advertising, pricing, the choice of insurance policy to sell – were controlled by Cornerstone. *Id.* at 345.

In *Powell*, the Court determined that the mold remediation projects consisted of manual labor and required no specialized skill. *See Powell*, 2005 WL 2429245 at *6.   Some of the

21

plaintiffs stated that they did not have any highly skilled work experience and did not possess a mold remediation license. *Id.* at *6.   More importantly, all of the major components that evidence business initiative, such as securing the contracts, establishing the pricing for the contracts, and contacting customers, were all controlled by Collier Construction and not the plaintiffs. *Id.* at *6.

Again, the facts in the present case are nearly identical to those in *Hopkins* and *Powell*. The work of a joiner is simply manual labor.   Additionally, both joiners and janitors for GVMS perform low skilled labor like picking up trash, sweeping floors, and mopping floors.   (*See* Exhibit "B" at 98, lns. 23.)   None of the Plaintiffs hold any specialized license or certification. (*See* Exhibits "D," "E," "F" and "G.")   Many of the Plaintiffs do not have high school educations or are even literate. (*See id.*)   No specialized training is needed to get a job at GVMS and there are no set number of years of experience that are necessary before a person can work for GVMS as a joiner. (*See* Exhibit "C," at 77, lns. 16-19.)   George Vasquez repeatedly testified in his deposition that he believed that the joiners were "skilled professionals."   However, this argument is undercut by his deposition testimony.   George Vasquez testified in his deposition that even as little as one day of experience in remodeling work would enable someone to be considered a "skilled professional" in his mind. (*See* Exhibit "B," at  150, lns. 19-25; 151, lns. 1-18.)

More importantly, all of the major components that evidence business initiative were controlled by Defendants.   As noted above, Defendants secured the contracts, contacted the potential clients, and set the prices for the contracts. (*See id.* at 81, lns. 18-23; 178, lns. 19-25; 191, ln 25; 192, lns. 1-8.)   This factor weighs heavily in favor of employee status.

22

       v.     *Plaintiffs had a lengthy work relationship with Defendants such that the "permanency of the relationship" factor supports employment status.*

In determining whether this factor weighs in favor of employee status, Courts look to the length of the relationship between the worker and the purported employer and whether the worker also performed services for another employer during the time period that he worked for the purported employer. *See Powell,* 2005 WL 2429245 at *7; *Robicheaux,* 697 F.2d at 666-67; *Reich,* 890 F. Supp. at 593. Independent contractors often have fixed employment periods and transfer from place to place as particular work is offered to them, whereas an employee usually works for only one employer and such relationship is continuous and of an indefinite duration. *See Dole v. Snell,* 875 F.2d 802, 811 (10th Cir. 1989). Durations of employment from "ten months to three years" have been deemed substantial periods of time to support employee status. *See Robicheaux,* 697 F.2d at 666.

There is no question that this factor weighs heavily in favor of employee status. The Plaintiffs worked for extended periods of time for Defendants – many worked for well over two years with Defendants. Below are the dates identified by Defendants regarding some of the Plaintiffs' beginning and end dates of employment.

- Arturo Pena: August 2007 to May 2008 – approximately nine months;

- Leonardo German: September 2006 to May 2008 – approximately one year and eight months;

- Ramiro Morin: March 2006 to April 2008 – Approximately two years and one month;

- Rojelio Martinez: January 2006 to March 2008 – Approximately two years and two months; and

- Tomas Ruiz: September 2006 to May 2008 – Approximately one year and eight months.

23

(*See* Exhibit "J," Defendant's Answers to Plaintiff's Firs Interrogatories.)  Also, during the time that they were employed by Defendants, they never worked for any other employer. (*See* Exhibits "D," "E," and "F.") George Vasquez testified that he knew the Plaintiffs personally, had a close relationship with each of them, and worked with the Plaintiffs on a regular basis.  (*See* Exhibit "B," at 189, lns. 15-25; 190, ln.1.)  Obviously, such an affinity evidences a continued relationship with Defendants such that Plaintiffs should be considered employees.

> vi. *An additional consideration that also points in favor of finding an employment relationship between Plaintiffs and Defendants is the fact that Defendants provided Plaintiffs with fringe benefits such as loans, shirts, and payments for food.*

In addition to the above noted factors, Defendants provided additional fringe benefits to Plaintiffs which evidence an employer/employee relationship. For example, Defendants loaned the Plaintiffs money if they were going through financial hardship. (*See id.* at 188, lns. 9-15.) Additionally, at times, Defendants provided food for the Plaintiffs.  (*See* Exhibit "C," at 111, lns. 11-14.) Furthermore, Defendants deducted workers' compensation insurance from the Plaintiffs' pay (*see* Exhibit "B," at 195, lns. 23-25; 196, lns. 1-4) and the Plaintiffs were covered under Defendants' commercial general liability insurance policy.  (*See id.* at 201, lns. 13-19.) Moreover, the Defendants gave shirts to the Plaintiffs which indicated that they worked for GVMS. (*See* Exhibit "C," at 100, lns. 16-25; 101, lns. 1-3.)  It is also important to note that since the filing of this lawsuit, Defendants have changed their payroll policies and now pay overtime to the joiners and janitors. (*See* Exhibit "B," at 221, lns. 19-24.)  These additional considerations support a finding of employee status.

24

> vii.  *Defendants' actions in deducting workers' compensation premiums is persuasive evidence that Defendants viewed the Plaintiffs as their employees.*

Perhaps the most persuasive evidence of the Plaintiffs' employee status is the fact that the Defendants treated them as employees under the workers' compensation statute. In particular, Defendants illegally withheld from each employees pay check approximately 18% of their wages to pay for Defendants' workers' compensation premiums. (*See* Exhibit "B," at 202, lns. 16-23; Exhibit "H.") Defendant represented to the State of Texas that Plaintiffs were their employees. As a matter of economic reality, employers purchase workers' compensation insurance only for their actually employees, not for independent contractors.  It is legally and logically repugnant for Defendants to treat Plaintiffs as employees under the workers' compensation statute (in order to prevent job injury lawsuits) and claim they are independent contractors for purposes of paying overtime.

**D. The economic reality of the relationship between Plaintiffs and Defendants was of an employee/employer relationship.  The Plaintiffs were dependant upon and relied upon the business of Defendants for their continued employment.  Accordingly, Summary Judgment should be granted in favor of Plaintiffs and Plaintiffs are entitled to their overtime pay.**

This is a textbook case of when a worker should be considered an employee and not an independent contractor.  The economic reality of the relationship is a glaring example of an employee/employer relationship. Plaintiffs were low skilled wage earners and entirely dependant upon the business of Defendants for their continued work.   In situations such as these, Plaintiffs are clearly employees.  Even though, economic dependence is not necessarily conditioned on reliance on an alleged employer for one's primary source of income or for the necessities of life, *see, e.g., Brock,* 814 F.2d at 1054, Plaintiffs did work solely for Defendants for extended periods of time.

25

Again, the proper test examines whether the workers are dependant on a particular business or organization for their continued employment. *See id.* at 1054.  Plaintiffs depended upon Defendants for their continued employment.  Therefore, Plaintiffs ask this Court to grant Summary Judgment in favor of the Plaintiffs and enter the attached order finding that the Plaintiffs were employees of Defendants.

## VI.    CONCLUSION

Plaintiffs are entitled to summary judgment as a matter of law.   Plaintiffs have demonstrated that the factors used to determine whether a worker is an employee or independent contractor supports a finding that Plaintiffs were employees of Defendants.  Therefore, Plaintiff respectfully asks this Court to grant Plaintiffs' Motion for Summary Judgment.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that this Honorable Court grant Plaintiffs' Motion for Summary Judgment and grant any and all further relief that Plaintiffs are entitled at law and equity.

Respectfully submitted,

KENNEDY HODGES, L.L.P.

By: /s/ Galvin B. Kennedy
    Galvin B. Kennedy
    State Bar No. 00796870
    Federal Bar No.  20791
    3701 Kirby Drive, Suite 400
    Houston, Texas 77098
    Telephone: 713-523-0001
    Facsimile:  713-523-1116

**ATTORNEYS FOR PLAINTFFS**

OF COUNSEL:

Don J. Foty
State Bar No. 24050022
Federal Id No. 711552
KENNEDY HODGES, L.L.P.
3701 Kirby Drive, Suite 400
Houston, Texas 77098
Telephone: 713-523-0001
Facsimile:  713-523-1116

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served on all opposing parties by and through their attorney(s) of record via the Southern District's CM/ECF system on this 28th day of May 2009.

____/s/ Galvin B. Kennedy _____
Galvin B. Kennedy

27